IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHRISTINE DIANE HENDERSON,

    Plaintiff,

v.

CAROLYN L. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Case No. 6:14-cv-1053-PA

**ORDER**

**PANNER, District Judge**:

    Pro se Plaintiff Christine Dianne Henderson brings this action for judicial review of the Commissioner's final decision to deny her application for benefits under the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

### PROCEDURAL HISTORY

    Plaintiff has filed more than ten prior applications for periods of disability, disability insurance benefits, and supplemental security income. *See* Def.'s Brief 3 (citing Admin. Record (Tr.)) The prior applications have been denied. *See, e.g.*, Tr. 170-83 (2003 ALJ decision finding

1   –  ORDER

Plaintiff not disabled); Tr. 98-112 (2010 ALJ decision finding Plaintiff not disabled).

In 2010, Plaintiff filed the applications at issue here for a period of disability, disability insurance benefits, and supplemental security payments. Plaintiff alleges disability beginning in 1983 because of degenerative disc disease, migraines, hearing loss, impaired vision, chronic sinus problems, pain, chronic urinary tract infections, asthma, sleep apnea, chronic obstructive pulmonary disease, irritable bowel syndrome, neurogenic bladder, recurring methicillin-resistant Staphylococcus aureus (MRSA) infections, osteoporosis, a learning disability, anxiety, depression, and post-traumatic stress disorder.

Plaintiff's applications were denied initially and on reconsideration. In November 2012, Plaintiff received a hearing before an ALJ, where Plaintiff testified without representation. A vocational expert also testified.

In February 2013, the ALJ found Plaintiff not disabled. Tr. 56-72. The Appeals Council denied review in May 2014, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## THE ALJ'S FINDINGS

Plaintiff was born in 1965 and was 45 years old when she filed the current applications. Plaintiff attended college. She earned a certificate in medical transcription and qualified as a certified nursing assistant. Plaintiff earned enough in 2007 working part-time as a nursing assistant to qualify as substantial gainful activity. *See* Tr. 108, 111 (2010 ALJ decision).

Although Plaintiff alleges disability beginning in 1983, the 2010 ALJ decision determined that Plaintiff was not disabled up to July 16, 2010. The ALJ here ruled that Plaintiff had not shown a reason to reopen her previous applications, so the earliest possible date for the onset of disability is July 17, 2010.

The ALJ here found that Plaintiff's ability to perform basic work activities was limited by the severe impairments of cervical and lumbar degenerative disc disease; obesity; chronic obstructive pulmonary disease (COPD); asthma; neurogenic bladder; and personality disorder with borderline features. The ALJ found that although Plaintiff could not return to her past relevant

2 - ORDER

work as a home attendant and a mental health associate, she retained the residual functional capacity (RFC) to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, and to walk or stand for an hour at a time, for a total of 6 hours in an 8-hour work day. Plaintiff needed freedom to change positions at will while remaining on task, and may need a cane to walk at times. She required ready access to bathroom facilities to accommodate her need to self-catheterize because of her neurogenic bladder. The ALJ found that Plaintiff could understand, remember, and carry out simple, routine, repetitive work tasks, consistent with tasks that may be learned in 30 days or less. Plaintiff could occasionally interact with coworkers and the public.

Using this RFC, the ALJ consulted with a vocational expert at the hearing. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform work requiring a light level of exertion with the limitations noted, including occupations that exist in significant numbers in the national economy such as mail clerk, information router, and electronics worker. The ALJ concluded that Plaintiff was not disabled.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if the decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If the evidence is susceptible of more than one rational interpretation, the court must uphold Commissioner's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

### I. The Earliest Disability Onset Date Is July 17, 2010

Plaintiff claims that she has been disabled since 1983, when she turned 18. The ALJ,

3 – ORDER

noting that the 2010 decision denying benefits was administratively final, concluded Plaintiff had not shown a basis for reopening her previous applications for benefits. The ALJ therefore ruled that "the earliest possible legal onset date in the current claims is July 17, 2010, the day after" the prior ALJ's decision. Tr. 60.

Under the doctrine of claim preclusion, also known as *res judicata*, "when a claimant reapplies for disability benefits after an earlier denial, that earlier denial precludes the claimant from arguing that he was disabled during the period covered by the earlier decision." *Green v. Heckler,* 803 F.2d 528, 530 (9th Cir. 1986); *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988) (*res judicata* applies to administrative proceedings, although less strictly than to judicial decisions). Generally, "the Commissioner's refusal to reopen her decision as to an earlier period is *not* subject to judicial review." *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995) (original emphasis). I conclude that the ALJ properly applied claim preclusion in refusing to reopen Plaintiff's prior application for benefits.

The Commissioner's denial of a disability application also creates a presumption that the claimant continues to be non-disabled. *See Chavez,* 844 F.2d at 693. Here, however, the ALJ concluded that Plaintiff had "overcome the presumption of continuing non-disability by showing an increase in the severity of her impairments" since the 2010 decision. Tr. 60. The period at issue is from July 17, 2010, the day after the 2010 decision was issued, to February 1, 2013, the date of the ALJ decision here.

## II. Evidence Concerning the Period After February 2013 Is Not Relevant

Plaintiff has submitted medical records and other exhibits that are dated after the ALJ's decision in February 2013. Medical evaluations "made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Lester,* 81 F.3d at 832 (citation and quotation marks omitted). I conclude, however, that the later documents Plaintiff submitted are not relevant because they generally concern conditions diagnosed after February 2013.

For example, Plaintiff submits the medical reports of Dr. Benjamin L. Cho, an oncologist.

4 - ORDER

In March 2013, Dr. Cho diagnosed monoclonal gammopathy, a blood disorder, a condition that had not been diagnosed previously. *See* ECF No. 28-1, at 76-92. Dr. Cho's reports note a risk of "about 1% per year" that the condition could progress to "full blown multiple myeloma." ECF No. 28-1, at 78. Dr. Cho's reports may possibly be relevant to any subsequent application for disability benefits, but there is no objective medical evidence that the blood disorder was an impairment that limited Plaintiff during the relevant period. Nor are the other post-dated documents submitted by Plaintiff, many of which concern non-medical issues, relevant to her current applications for benefits.

Plaintiff did not submit the post-dated documents to the ALJ or the Appeals Council, so they are not part of the record. This court's review of the Commissioner's decision is limited to "the pleadings and transcript of the record." 42 U.S.C. § 405(g). This court may order that the Commissioner receive additional evidence, " but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* Here, Plaintiff has not shown that the new evidence she submitted is material to the applications at issue.

### III. Plaintiff Has Not Shown Any Reason to Question the ALJ's Fitness

Plaintiff argues that the ALJ's findings "give rise to the question of is the judge being judicially fit to perform his duties without stating his personal opinions/prejudice." ECF No. 24 at 4. Plaintiff notes that the ALJ found Plaintiff suffers from severe impairments but then concluded that Plaintiff was not disabled. ECF No. 24 at 4.

To show that an ALJ has violated a claimant's due process rights by failing to impartially assess the evidence, the claimant "must show that 'the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment.'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005) (quoting *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (further quotation marks and citation omitted)). Here, Plaintiff has not overcome the "presumption that the ALJ was unbiased." *Id.* at 1215.

The ALJ's credibility findings here are supported by substantial evidence, so they do not

5   -   ORDER

show bias. And there is no contradiction in a finding that a claimant suffers from severe impairments and an ultimate conclusion that the claimant is not disabled. Under the five-step sequential process for evaluating disability claims, the ALJ determines at the second step whether a claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A finding that a claimant suffers from a severe impairment, however, does not dictate a conclusion that the claimant is disabled, which depends on the ALJ's findings on the remaining three steps in the process.

At the hearing, the ALJ attempted to give Plaintiff guidance on representing herself. Shortly after the hearing, Plaintiff wrote that the ALJ and other staff members at the hearing were respectful, accommodating, and empathetic. *See* Tr. 3397-3400. I conclude that Plaintiff has not shown a valid basis for questioning the ALJ's fitness to decide her case.

## IV. The ALJ Properly Assessed Plaintiff's Non-Severe Impairments

Plaintiff argues that the ALJ incorrectly found that she did not suffer from severe impairments of hearing loss, dysthymia (depression), thyroid problems, or syncope (fainting). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). Plaintiff has the burden of showing that she suffered from a severe impairment or combination of impairments that lasted or was expected to last for twelve months. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005).

I conclude that substantial evidence supports the ALJ's findings that some of Plaintiff's alleged impairments were not severe. In any event, the ALJ incorporated most of the non-severe impairments in his findings on Plaintiff's RFC. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ must "consider all of the limitations imposed by the claimant's impairments, even those that are not severe").

Substantial evidence supports the ALJ's finding that Plaintiff's hearing loss was not a severe impairment because it was correctable with hearing aids. The ALJ noted that Plaintiff could

6 -- ORDER

follow what was said at the hearing despite wearing only one hearing aid. The ALJ included a limitation in the RFC that Plaintiff must avoid exposure to loud noise. Tr. 65.

Substantial evidence also supports the ALJ's finding that "there is insufficient objective basis for determining that [Plaintiff's] depression and anxiety" were severe. Tr. 63. The ALJ cited the report of David Northway, Ph.D., a psychologist who examined Plaintiff for the state Disability Determination Services in November 2010. The ALJ reasonably accepted Dr. Northway's conclusion that "[w]hile [Plaintiff] does have some signs of anxiety and depression, these seem to have less of an impact on her functional abilities [than the personality disorder]." Tr. 3671. There was substantial evidence to support ALJ's decision to give greater weight to Dr. Northway's evaluation than to the opinion of Plaintiff's treating physician, Dr. Christine Jensen-Fox, because Dr. Northway was "better trained to assess mental impairments." Tr. 70; Tr. 69 (ALJ decision notes that "Dr. Jensen-Fox conceded that she is not a psychiatrist and her treatment notes do not reflect any significant treatment she provided" for psychological impairments).

Substantial evidence supports the ALJ's finding that Plaintiff's thyroid condition was under control with medications, based on the report of Dr. Jensen-Fox. Tr. 3702. The ALJ reasonably found that Plaintiff's thyroid condition was not a severe impairment.

There was also substantial evidence that Plaintiff's syncopal episodes were not a severe impairment. The ALJ noted that the record does not contain a medical explanation for these apparently infrequent episodes.

Plaintiff also alleges other impairments, including the blood disorder mentioned above, frozen shoulder, a vitamin deficiency, and a seizure disorder. ECF No. 28 at 5; ECF No. 29 at 14. These alleged impairments appear to have been diagnosed after the ALJ's decision, so they are not relevant here.

## V. The ALJ's Credibility Findings Are Valid

### A. Legal Standards for Credibility Findings

To show that a claimant's testimony has not been arbitrarily discredited, the ALJ must make specific credibility findings. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).

7 - ORDER

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281–82 (9th Cir. 1996)). "If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen,* 80 F.3d at 1283–84). The ALJ may consider many factors in determining a claimant's credibility, including (1) ordinary techniques of for evaluating credibility, such as the claimant's reputation for exaggeration, prior inconsistent statements about symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Id.* (quoting *Smolen,* 80 F.3d at 1284).

### B. The ALJ's Findings on Plaintiff's Credibility

Here, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause some of the symptoms she alleges, but that Plaintiff's statements were not entirely credible on the intensity, persistence, and limiting effects of the symptoms. Tr. 68. The ALJ did not find that Plaintiff was malingering.

Because Plaintiff has shown objective medical evidence of impairments and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for his finding that Plaintiff's statements about the severity of her symptoms are "less than fully credible." Tr. 68. I conclude that the ALJ has met this burden.

The ALJ first noted that "every previous ALJ to review the claimant's allegations found that she lacked credibility for a variety of reasons, including ongoing work activity, other activities inconsistent with alleged limitations, inconsistencies in allegations, and more." Tr. 68. The ALJ adopted these previous findings. Prior findings on Plaintiff's credibility are relevant to her credibility here.

The ALJ found that "the medical evidence of record continues to fail to show objective

8 - ORDER

findings consistent with the degree of severity reported by claimant." Tr. 68. The ALJ may consider whether objective medical findings support the claimant's reported symptoms. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

A claimant's failure to seek or comply with medical treatment for an allegedly disabling condition may reasonably cast doubt on the severity of the condition. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, there is substantial evidence for the ALJ's findings that Plaintiff "engaged in minimal, conservative treatment throughout the relevant timeframe, including that she received very little management of any pain complaints." Tr. 68. Similarly, there is substantial evidence that Plaintiff received minimal treatment for her psychological impairments. Plaintiff did not receive significant mental health treatment during the relevant period, despite her complaints of debilitating symptoms. Tr. 4314. Plaintiff claimed that she did not continue mental health treatment because she lacked transportation, but the ALJ noted a report by the Cooperative Disability Investigation Unit (CDIU) finding Plaintiff had "a valid driver's license, a working vehicle, and a reported history of daily driving." Tr. 68; Tr. 3675-86 (December 2010 CDIU report). The ALJ also noted that Plaintiff may have failed to seek mental health counseling because "she was germ phobic out of fear of spreading MRSA and/or catching another infection." Tr. 67; Tr. 4314 (Plaintiff testified she stopped group counseling in part because of fear of infecting others or being infected). Plaintiff has stated that she has refused antidepressants because they made her feel medicated and unable to protect herself. *See, e.g.*, Tr. 3924 (Dr. Jensen-Fox notes that Plaintiff rejects a prescription for Zoloft to treat depression). Plaintiff's failure to seek treatment for her psychological impairments is a valid reason to question the credibility of her statements on the severity of the impairments.

As to Plaintiff's spinal issues, the ALJ noted that medical imaging records showed mild degenerative changes in Plaintiff's lumbar and cervical spine, for which Dr. Jensen-Fox prescribed low-dose, non-narcotic pain medications. Tr. 66. As to Plaintiff's asthma and other breathing limitations, Plaintiff's lungs were generally clear on examination, and she used her inhaler three

9 - ORDER

times a week at most during flare-ups.

Plaintiff's ongoing urinary difficulties, including neurogenic bladder and urinary tract infections (UTIs) every four to six months, appeared to be under control. Dr. Mark Carson, a urologist, found that Plaintiff had "good bladder capacity without unstable contractions," and opined that "her primary cause for catheterization frequency is large fluid intake." Tr. 3761. Dr. Carson also stated that Plaintiff may suffer from "non-neurogenic bladder" of unknown origin. Tr. 3772 (Dr. Carson noted "non-neurogenic neurogenic [sic] bladder"); Tr. 4305 (Plaintiff testified that Dr. Carson diagnosed non-neurogenic bladder, telling her "sometimes you can't find a reason why it's not working right").

The ALJ also discounted Plaintiff's credibility because of Plaintiff's dramatic presentation style. Tr. 68. For example, Dr. Northway, the examining psychologist, noted "overly dramatic presentation[] and strong sense of victimization and entitlement." Tr. 3670. This is a valid reason to discount Plaintiff's credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("tendency to exaggerate" may be a valid reason to discount claimant's credibility). I conclude that the ALJ gave legally sufficient reasons, supported by substantial evidence in the record, for discounting Plaintiff's credibility. *See Batson*, 359 F.3d at 1197 (court may affirm an ALJ's credibility conclusion even when not all of the ALJ's reasons are upheld).

## VI. Substantial Evidence Supports The ALJ's Findings on Dr. Jensen-Fox's Opinions

The ALJ must determine credibility and resolve ambiguities and conflicts in the medical evidence. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). To reject the opinion of a treating or examining physician that is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.2005) (citation omitted). The ALJ is not required to accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

10 – ORDER

1228 (9th Cir. 2009) (citation and alteration omitted). "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195 (citation omitted).

The ALJ here gave some weight to the opinions of Dr. Jensen-Fox, Plaintiff's primary treating physician during the relevant period. On mental health issues, the ALJ did give greater weight to the conflicting opinion of Dr. Northway, the examining psychologist. The ALJ also gave weight to the opinions of state medical consultants on Plaintiff's physical capacity. Tr. 70.

The ALJ specifically evaluated Dr. Jensen-Fox's reports. Dr. Jensen-Fox submitted a physician's certification to support Plaintiff's application to discharge student loans because of disability. Tr. 3632. In that certification, from August 2010, Dr. Jensen-Fox stated that Plaintiff was disabled by a neurogenic bladder, recurrent urinal tract infections, sleep apnea, asthma, hearing impairment, L4 - L5 disc disease, anxiety, and depression. Dr. Jensen-Fox stated that Plaintiff suffered from "back pain with long periods of sitting, standing, or ambulation," and required a cane during exacerbation of back pain. Tr. 3632. The ALJ did not accept this evaluation, stating that the "identified impairments would not necessarily result in a finding of disability and Dr. Jensen-Fox did not identify any significant objective findings." Tr. 69.

Dr. Jensen-Fox also stated that Plaintiff suffered from "anxiety, depression, adjustment disorder -- probably the major deterrent to employment." Tr. 3632. Dr. Jensen-Fox did not provide a Global Assessment Function (GAF) score, stating "I am not a psychiatrist." Tr. 3632.

The ALJ reasonably concluded that Dr. Northway's opinion on Plaintiff's psychological impairments was entitled to greater weight than Dr. Jensen-Fox's conclusory opinion. The ALJ properly credited Dr. Northway's opinion that Plaintiff did not show signs of post-traumatic stress disorder (PTSD), and that Plaintiff's relatively mild anxiety had little effect on her ability to function. The ALJ also credited Dr. Northway's opinion that Plaintiff's "social deficits, including self-isolation, were the result of her personality disorder rather than her minimal depression." Tr.

63. The ALJ noted that "Dr. Northway assigned a GAF score of 57, indicative of no more than moderate symptoms." Tr. 63.

The ALJ properly discounted Dr. Jensen-Fox's statement that Plaintiff suffered from "total and permanent disability" as both conclusory and as addressing an issue reserved for the Commissioner. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). A treating physician "ordinarily does not consult a vocational expert or have the expertise of one." *Id.*

I conclude that the ALJ also properly discounted Dr. Jensen-Fox's opinions from a September 2011 letter to Plaintiff's then-attorney (who no longer represented Plaintiff at the hearing). In the letter, Dr. Jensen-Fox stated that Plaintiff's physical impairments limited her to part-time, sedentary exertion. Tr. 3702. Dr. Jensen-Fox wrote that Plaintiff's psychiatric issues, recurrent acute exacerbations of underlying health issues, and poor coping skills would "most likely result in high absenteeism, given her pattern of visits at our clinic and her specialty appointments." Tr. 3702. The ALJ gave this statement "slightly less weight" than Dr. Jensen-Fox's previous statement because "Dr. Jensen-Fox still did not provide function-by-function limitations, including that she did not indicate how she arrived at the conclusion of part-time sedentary exertion. Dr. Jensen-Fox did not identify objective findings that warranted such dramatic restrictions and the other evidence of record did not contain such findings." Tr.69. The ALJ also found that other evidence in the record did not support "concerns about high absenteeism," such as Plaintiff's pattern of seeking medical attention about twice a month. Tr. 69. The ALJ finally noted that because Dr. Jensen-Fox lacked specialized mental heath training, her "vague conclusions . . . based on the claimant's self-reports" were not persuasive. Tr. 69. Substantial evidence supports the ALJ's findings on Dr. Jensen-Fox's opinions.

I conclude that substantial evidence supports the ALJ's decision that Plaintiff was not disabled between July 17, 2010 and February 1, 2013.

## CONCLUSION

The Commissioner's decision is affirmed. Plaintiff's motion for default judgment (#49) is

denied.

    IT IS SO ORDERED.

    DATED this __4__ day of ~~December~~ Jan, 20~~15~~16.

                            OWEN M. PANNER
                            U.S. DISTRICT JUDGE

13 - ORDER